# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

|  |  |  |
|---|---|---|
| HRD CORPORATION (d/b/a Marcus Oil & Chemical), | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 4:13-cv-03596 |
| THE DOW CHEMICAL COMPANY, | ) ) ) | |
| Defendant. | ) ) | |

# DOW'S MOTION TO TRANSFER VENUE OR, ALTERNATIVELY, TO DISMISS HRD'S COMPLAINT WITH PREJUDICE UNDER RULE 12(b)(6)

# TABLE OF CONTENTS

NATURE AND STAGE OF THE PROCEEDING....................................................................1

STATEMENT OF THE ISSUES.........................................................................................1

SUMMARY OF THE ARGUMENT ....................................................................................2

FACTUAL BACKGROUND ..............................................................................................3

I.     HRD'S COUNTERCLAIMS IN THE DELAWARE LITIGATION .................................3

II.    HRD'S ALLEGATIONS OF DISCOVERY MISCONDUCT BY DOW .........................4

III.   THE DELAWARE COURT'S FIRST SUMMARY JUDGMENT OPINION..................5

IV.    HRD'S MOTION TO REOPEN DISCOVERY ..............................................................5

V.     THE DELAWARE COURT'S FINAL JUDGMENT AND HRD'S SECOND
       BANKRUPTCY ..........................................................................................................9

VI.    HRD'S NEW COMPLAINT ........................................................................................9

ARGUMENT ..................................................................................................................11

I.     THE COURT SHOULD TRANSFER THIS LAWSUIT TO DELAWARE. ...................11

       A.     The Interests of Judicial Economy Strongly Favor Transfer. ................................11

       B.     Delaware Is a Proper Venue. ..............................................................................15

       C.     The Convenience of the Parties and Witnesses Also Favor Transfer. ...................15

II.    ALTERNATIVELY, HRD'S NEW COMPLAINT SHOULD BE DISMISSED............17

       A.     *Res judicata* and Collateral Estoppel Preclude HRD's Claims Because the
              Delaware Court Already Ruled on Them. .............................................................17

              1.     *Res Judicata* Bars HRD's Already-Rejected Claims................................17

              2.     Collateral Estoppel Precludes Re-Litigation of HRD's Claims.................20

       B.     HRD's New Complaint Fails to Satisfy the Applicable Pleading Standards.........21

              1.     HRD Fails to Plead Facts that Plausibly Allege a Dow Breach of
                     the JDA (Counts 1 and 2)........................................................................22

              2.     HRD's Fraudulent Concealment Claim Does Not Plead Facts With
                     Sufficient Particularity (Count 3).............................................................24

i

CONCLUSION................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Alcan Aluminum Corp. v. BASF Corp.*,
   133 F. Supp. 2d 482 (N.D. Tex. 2001) ...........................................................................24, 25

*Ashcroft v. Iqbal*,
   129 S. Ct. 1937 (2009) ...................................................................................................22

*Banks v. Schutter*,
   2008 WL 4826285 (E.D. Pa. Nov. 6, 2008) ...................................................................19

*Bashore v. Resurgent Capital Servs., L.P.*,
   452 F. App'x 522 (5th Cir. 2011) ...................................................................................23

*Biggins v. Hazen Paper Co.*,
   111 F.3d 205 (1st Cir. 1997) ..........................................................................................21

*Bobby v. Bies*,
   129 S. Ct. 2145 (2009) ...................................................................................................20

*Clemons v. WPRJ, LLC*,
   928 F. Supp. 2d 885 (S.D. Tex. 2013) ...........................................................................25

*Cont'l Grain Co. v. The Barge FBL-585*,
   80 S. Ct. 1470 (1960) .....................................................................................................12

*Dimitric v. Tex. Workforce Comm'n*,
   2009 WL 33412 (S.D. Tex. Jan. 5, 2009) ......................................................................17

*Fowler v. UPMC Shadyside*,
   578 F.3d 203 (3d Cir. 2009).............................................................................................22

*Gonzales v. Everbank*,
   2013 WL 6667724 (W.D. Tex. Dec. 17, 2013) ..............................................................23

*Greene v. Indymac Bank, FSB*,
   2012 WL 5414097 (S.D. Miss. Nov. 6, 2012).................................................................25

*H-W Tech., L.C. v. Domino's Pizza LLC*,
   2013 WL 6333438 (N.D. Tex. Dec. 5, 2013) ...................................................12, 13, 15, 16

*Harper Plastics, Inc. v. Amoco Chems. Corp.*,
   657 F.2d 939 (7th Cir. 1981) ..........................................................................................18

*Houston Trial Reports, Inc. v. LRP Publ'ns, Inc.*,
  85 F. Supp. 2d 663 (S.D. Tex. 1999) ..................................................13

*In re Keaty*,
  397 F.3d 264 (5th Cir. 2005) ...........................................................20

*In re Volkswagen AG*,
  371 F.3d 201 (5th Cir. 2004) ...........................................................15

*In re Volkswagen of Am., Inc.*,
  566 F.3d 1349 (Fed. Cir. 2009)................................................11, 12, 13

*Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*,
  238 F.3d 363 (5th Cir. 2001) ...........................................................24

*Montana v. United States*,
  99 S. Ct. 970 (1979) .......................................................................17

*Muthukumar v. Univ. of Tex. at Dallas*,
  2010 WL 5287530 (N.D. Tex. Dec. 27, 2010) ...................................22

*Perry v. Williams*,
  2013 WL 1703741 (D.S.C. Apr. 19, 2013)........................................22

*Regents of the Univ. of Cal. v. Eli Lilly & Co.*,
  119 F.3d 1559 (Fed. Cir. 1997).......................................................12

*Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter*,
  607 F.3d 1029 (5th Cir. 2010) .........................................................24

*Sullivan v. Hyland*,
  647 F. Supp. 2d 143 (D. Conn. 2009).............................................18

*Tuchman v. DSC Commc'ns Corp.*,
  14 F.3d 1061 (5th Cir. 1994) ...........................................................25

*United States v. Davenport*,
  484 F.3d 321 (5th Cir. 2007) ...........................................................18

*Wagner v. Aurora Loan Servicing*,
  2011 WL 6819041 (D. Haw. Dec. 27, 2011).....................................22

## STATUTES

28 U.S.C. § 1391(b)(1) ......................................................................15

28 U.S.C. § 1404(a) ............................................................1, 11, 15, 16

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 12(b)(6) ........................................................................25

Delaware Local Rule 3.1(b) ...........................................................................................14

Federal Rule of Civil Procedure 9(b) ..................................................................... passim

Federal Rule of Civil Procedure 62(d) ...............................................................................9

## NATURE AND STAGE OF THE PROCEEDING

Although HRD filed its Complaint on December 9, 2013 (the "New Complaint"), the parties' litigation stretches back to January 2005, when The Dow Chemical Company ("Dow") filed a Complaint against HRD Corporation ("HRD") in the United States District Court for the District of Delaware for HRD's plain breach of contract ("the Delaware Litigation" before the "Delaware Court"). (Ex. 1.)[1]  HRD raised extensive counterclaims that cover the same ground as that found in HRD's New Complaint. Critically, although Dow prevailed on its claim, HRD's claims were fully rejected on the merits, and are now on appeal to the Third Circuit. This followed an extensive opportunity—nearly nine years—afforded to HRD to take discovery and litigate the very issues HRD now brings before this Court.

Respectfully, HRD's attempted resuscitation of its claims should be transferred to Delaware in the interests of justice so that a court having nearly a decade of experience with the claims can adjudicate them most efficiently.[2]  Should the Court decide not to transfer the case, the Court should dismiss HRD's New Complaint because it is barred by *res judicata* and collateral estoppel, and fails to state a plausible claim and meet applicable pleading standards.

## STATEMENT OF THE ISSUES

1. Whether, under 28 U.S.C. § 1404(a) and in the interest of judicial economy and for the convenience of the parties and witnesses, the Court should transfer the case to the

---

[1] "Ex." refers to the Exhibits to the Declaration of Penn C. Huston that accompanies this motion.

[2] As a threshold matter, it is worth noting that HRD's New Complaint mischaracterizes the Delaware proceedings in a manner favorable to HRD. While Dow strongly disagrees with HRD's characterization and presents its version in this motion, this "he said, she said" scenario supports sending this case to the District of Delaware, which is familiar with the actual history.

District of Delaware, a court already intimately familiar with both parties as well as the factual and legal issues presented by HRD's New Complaint.

2.    Whether, in the alternative, the Court should dismiss HRD's New Complaint—whose claims the Delaware Court has already rejected—because it is barred by *res judicata* and collateral estoppel, fails to allege a plausible claim for relief for breach of contract under *Twombly/Iqbal*, and does not identify with particularity the circumstances constituting fraudulent concealment as required by Rule 9(b).

## SUMMARY OF THE ARGUMENT

The Court should transfer this lawsuit to the District of Delaware to promote judicial economy. The Delaware Court is already intimately familiar with the factual and legal claims underpinning HRD's New Complaint, including the contract at issue (the Joint Development Agreement ("JDA")) and the patent applications that HRD asserts fall within its scope. As Dow is incorporated in Delaware, Delaware is a proper venue for this action. HRD's New Complaint acknowledges as much, stating an intention to have this case transferred to Delaware should its Third Circuit appeal result in a remand. Moreover, while the interests of judicial economy alone are sufficient to justify transfer, the remaining applicable public and private interest factors also favor transfer.

In the alternative, the Court should dismiss HRD's New Complaint with prejudice for two main reasons. First, *res judicata* and collateral estoppel bar HRD's patent ownership claims because the Delaware Court has rejected the claims on the merits. Second, HRD's New Complaint does not meet the applicable pleading standards in failing to plead facts that could plausibly show any JDA breach by Dow, and its fraudulent concealment claim falls far short of Rule 9(b)'s heightened pleading standard.

## FACTUAL BACKGROUND

### I.    HRD'S COUNTERCLAIMS IN THE DELAWARE LITIGATION

Dow filed its breach of contract suit against HRD before the Delaware Court in January 2005.[3]    In January 2009, HRD raised counterclaims that Dow breached the parties' Joint Development Agreement ("JDA") and a duty of good faith in perfecting patent rights by applying for patents covering inventions that supposedly belonged to HRD.  (Ex. 4 at ¶¶ 150-59.)  HRD had earlier raised counterclaims based on other theories.[4]  (Ex. 2 at ¶¶ 110-44.)

HRD's patent ownership claims relied on the JDA's allocation of ownership rights to inventions developed under the JDA between HRD and Dow.  The JDA assigned some inventions to Dow and others to HRD with the defined term "Development."  The JDA defined Development as an invention concerning Polyethylene Waxes (another defined term) that was "first actually reduced to practice . . . both during the Activity Period and as a result of work performed in connection with [the] JDA."  (Ex. 1 at Ex A ¶ 10.7.)[5]

Under the JDA, HRD owned "Developments that are (1) products made from or containing Polyethylene Waxes, (2) process[es] for making products made from or containing Polyethylene Waxes, and/or (3) methods of use of Polyethylene Waxes."  (*Id.* at ¶ 4.2(a).)  Dow owned all other Developments.  (*Id.* at ¶ 4.2(b).)

---

[3] Dow's claim was for HRD's non-payment under a different contract between the parties known as the Supply Agreement.

[4] Early on, HRD claimed $2.6 billion in damages, and as the case progressed, $720 million.  (*See* Ex. 10 at 2.)

[5] Under the JDA, a Polyethylene Wax is a (i) metallocene ethylene homopolymer or copolymer having (ii) a number average molecular weight of 600-9,000, (iii) a density greater than 0.89 g/cc, and (iv) a melting temperature above 50°C.  (Ex. 1 at Ex A ¶ 10.13; *id.* at Addendum.)  The Activity Period was "the period of time for performing the JDA activities," lasting from June 24, 2002, until June 30, 2003.  (*Id.* at ¶ 10.1.)

Thus, the JDA granted ownership rights to HRD only for inventions that (i) belonged to one of the three categories of invention allocated to HRD; (ii) was actually reduced to practice during the Activity Period; and (iii) resulted from work performed in connection with the JDA. HRD claimed that under this framework, Dow had deprived HRD of patent applications that were rightfully HRD's.

## II.    HRD'S ALLEGATIONS OF DISCOVERY MISCONDUCT BY DOW

In early 2009, after years of protracted litigation and discovery efforts and in the midst of summary judgment briefing, HRD moved for case-terminating sanctions against Dow.  (*See* Ex. 5 at 2.)  HRD alleged that Dow improperly withheld evidence, the disclosure of which would have purportedly saved HRD's case.  (*Id.*)

In July 2009, the Delaware Court emphatically denied HRD's sanctions motion.  (*Id.* at 1.)  It noted that HRD's motion "presented the Court with a piñata of alleged Dow discovery abuses, most of which totally lack merit."  (*Id.* at 3.)[6]  Its opinion "addresse[d] a selection of alleged violations that illustrate[d] the overall inappropriateness of HRD's motion."  (*Id.* at 4.) The Delaware Court awarded Dow the substantial legal fees and costs incurred in defending against the motion.  (*Id.* at 18.)  This award was later vacated after a change in judges because there had not been an express finding that HRD brought the motion in bad faith—and not because Dow was found to have committed any kind of sanctionable discovery misconduct.  (Ex. 11 at 8-9.)

---

[6] The Delaware Court found that two alleged discovery violations had a "small amount of merit." (Ex. 5 at 4.)  HRD relies on these two minimally-meritorious alleged violations to assert that the Delaware Court found fault with Dow's discovery practices.  (*See id.* at 15-17; Compl. ¶ 13.)

## III.     THE DELAWARE COURT'S FIRST SUMMARY JUDGMENT OPINION

In September 2009, the Delaware Court issued a summary judgment opinion finding that HRD was liable on Dow's breach of contract claim. (Ex. 6 at 1.) The Delaware Court also dismissed all of HRD's counterclaims except for two (out of six) patent ownership claims and some of HRD's trade secret claims. (*Id.*) The four dismissed patent ownership claims were claims to applications either listed in HRD's New Complaint or related to applications listed therein. (*See* Ex. 15 at 9-10.) In disposing of most of HRD's patent ownership claims, the Delaware Court rejected HRD's arguments that "Dow failed to cooperate in the filing of patent applications" and "failed to disclose certain documents pertaining to inventions made in relation to work under the [JDA]." (Ex. 6 at 46, 54-55.)

Following summary judgment, discovery continued until July 2011, when HRD filed for bankruptcy in Texas (for the first time). (*See* Ex. 24.) HRD emerged from bankruptcy on March 2, 2012.

## IV.     HRD'S MOTION TO REOPEN DISCOVERY

In late 2012, the Delaware Court adjudicated two closely-related motions that concerned the same patents listed in Exhibit 1 to HRD's New Complaint. (*Compare* Compl. Ex. 1 *with* Ex. 12.) The motions were HRD's Motion to Reopen Discovery[7] and Dow's exceptions to the Special Master's[8] definition of the JDA term "containing a PE Wax." (Exs. 7, 8.) The motions

---

[7] Discovery in the Delaware Litigation closed August 23, 2009. During discovery, Dow produced more than 155,000 pages of documents in response to over 1,100 HRD document requests. HRD also took 16 depositions of Dow employees and experts and propounded over 35 interrogatories. (Ex. 10 at 5.)

[8] On November 10, 2008, Special Master B. Wilson Redfearn, Esq., was appointed to help adjudicate the parties' discovery disagreements. (Ex. 3.)

were related because HRD's position that discovery should be reopened depended in part on its overly expansive definition of "containing a PE Wax." (*See* Ex. 15 at 1-4.)

Dow contended that a PE Wax was defined as a polymer or polymer blend and that analytical testing was required to see whether a product contained such a polymer. (*Id.* at 3-4.) HRD contended that a product contained a PE Wax if Dow employees were aware that the product included molecules in a certain range and knew the molecules would affect the properties of the product, even if the product never contained a polymer that could be considered a PE Wax. (*Id.*) Dow countered that HRD's definition was unrealistic because it would cover every linear polyethylene ever made from the 1950s to the present—certainly not a definition originally intended by the parties. (*See* Ex. 9 at 7.)

In its Motion to Reopen Discovery, HRD sought discovery on "hundreds of patents" that it claimed "should have been disclosed in discovery and may well belong to HRD." (Ex. 7 at 6.) HRD identified these patents on a schedule of 25 "Dow Patent Families" that lists the exact same patents and applications as Exhibit 1 to the New Complaint. (*Compare* Compl. Ex. 1 *with* Ex. 12.)

HRD also submitted an expert report of Dr. Joel Citron, who discussed in detail each patent family on the schedule. (Ex. 14.) Dr. Citron opined that each patent family disclosed inventions that were Developments owned by HRD under the JDA. (*Id.* at ¶¶ 27-55.) Dow deposed Dr. Citron in Delaware, questioning him extensively on his report and every patent family.[9]

_____

[9] Dr. Citron is the expert HRD refers to in its New Complaint as having supposedly found "literally hundreds of patent applications that, on their face, appeared to stem from the JDA." (Compl. ¶ 21.)

HRD argued, as it does in its New Complaint, that the applications disclosed inventions that belonged to it under the JDA. (Ex. 7 at 8-13; Ex. 13 at 6-10.) HRD also discussed examples from many of the 25 patent families listed on HRD's schedule. (Ex. 14 at ¶¶ 27-55.) In opposition to the Motion to Reopen Discovery, Dow explained in detail that the applications did not fall within the scope of the JDA. (Ex. 10 at 13-19.) For example, Dow noted that the '497 and '861 applications did not fulfill certain requirements of the JDA because they did not disclose a PE wax and/or they were not actually reduced to practice during the "Activity Period." (*Id.* at 15-18.) Failure to meet these requirements meant the applications were not HRD's. (*Id.*)

After extensive briefing and a two-hour hearing, the Delaware Court issued a memorandum opinion denying HRD's Motion to Reopen Discovery and sustaining Dow's exception to the Special Master's ruling regarding the definition of "containing a PE Wax." (Ex. 15.) The Delaware Court agreed with Dow's interpretation of the scope of inventions belonging to HRD under the JDA (*id.* at 3-4), disagreed with HRD's, and denied HRD's motion.

The Delaware Court decided that none of the patents or patent applications cited by HRD—the very same ones that are the subject of HRD's New Complaint—fell within the scope of the JDA: "HRD cites numerous patent applications that it discovered through its own investigation, arguing that they met Dow's criteria [for determining the scope of the JDA]. . . . None of the applications HRD cites are demonstrative of Dow discovery failings*, as they do not fall within the scope of the JDA*." (*Id.* at 6-7 (emphasis added).)

The stated reasons for the Delaware Court's unequivocal decision that the patents and applications "do not fall within the scope of the JDA" went directly to the merits of HRD's patent ownership claims. For example, the Delaware Court denied HRD's claim to the '497 application because the application was never reduced to practice and was therefore "not within

the scope of both the JDA and Supply Agreement" (*id.* at 7), and denied HRD's claim to the '861

application because there was "no indication that the '861 application is related to a hot melt

adhesive product[10] . . . ." (*Id.* at 8.) The court also addressed the other applications explicitly

mentioned in HRD's Motion to Reopen Discovery:

- "Because there is no indication that the '416 application meets Dow's criteria for production, its existence does not provide good cause to reopen discovery." (*Id.* at 8-9.)

- "The '777 application is a grandchild application of . . . [the '444 application]. This Court held in its Summary Judgment opinion that the '444 application was directed to areas of invention allocated to Dow." (*Id.* at 9.)

- "The face of [WO 2005/090427] shows that it shares a disclosure with U.S. Application No. PCT/US2005/008917. This Court previously granted summary judgment on this application in Dow's favor." (*Id.*)

- "HRD then cites U.S. Patent No. 7,897,689, but this patent was likewise disposed of on summary judgment." (*Id.* at 10.)

- "HRD then cites U.S. Patent No. 7,259,219, which again, was subject to the Court's summary judgment motion in Dow's favor." (*Id.*)

- "HRD next cites U.S. Patent No. 8,034,878 . . . . This Patent was further subject to the Court's summary judgment opinion." (*Id.*)

It is this merits-based decision of the Delaware Court that HRD mischaracterizes blithely

in its New Complaint as follows: "The Court . . . concluded that since the discovery deadline had

passed, HRD was not entitled to reopen discovery or make claims as to [HRD's] newly

discovered patent applications." (Compl. ¶ 23.)

HRD includes this Delaware Court ruling in its broader Third Circuit appeal, asking

"[w]hether HRD was entitled to reopen discovery because of Dow's refusal to produce relevant

---

[10] A hot melt adhesive is a product containing (1) a polymer, (2) a wax, and (3) a tackifier. (Ex. 15 at 8.) HRD argued that the '861 application disclosed a product called a "two-pack," which takes the place of the polymer and wax in a hot melt adhesive. (*Id.*)

patent applications during discovery, which failure resulted in summary judgment against HRD on all of its claims." (Ex. 26 at 2.)

## V. THE DELAWARE COURT'S FINAL JUDGMENT AND HRD'S SECOND BANKRUPTCY

In December 2012, nearly eight years after litigation began, the Delaware Court awarded Dow summary judgment on HRD's remaining counterclaims, including HRD's two remaining patent ownership claims, as well as Dow's damages. (Exs. 16-17.) The Delaware Court awarded a final judgment of $34,533,577 in Dow's favor (Ex. 18), plus $3,260,531.66 in attorneys' fees to Dow pursuant to a contractual fee-shifting provision. (Exs. 20-21.)

On April 15, 2013, HRD filed a notice of appeal (Ex. 19), but did not post (and has not since posted) a supersedeas bond pursuant to Rule 62(d) to stay the execution of judgment during HRD's appeal. On October 2, 2013, the Delaware Court rejected HRD's attempts to stay the execution of judgment pending appeal without an appropriate bond. (Ex. 22.) That very same day, HRD filed for bankruptcy for a second time, preventing (or at least delaying) Dow from collecting its judgment. (Ex. 25.) HRD's second bankruptcy remains ongoing.

## VI. HRD'S NEW COMPLAINT

In December 2013, HRD filed its New Complaint with this Court. HRD asserts that "quite by accident, HRD learned of two Dow patent applications [the '497 and '861 applications] related to the JDA and that dated back to the time of the JDA which had not been disclosed in discovery" in the Delaware Litigation. (Compl. ¶ 15.) HRD re-raises the arguments from its failed Motion to Reopen Discovery to allege that the same applications fall within the scope of the JDA. (*Id.* at ¶¶ 16-17.) It then claims that "Dow's failure to disclose both of these applications, after repeated requests during the discovery period, was a breach of the JDA, a breach of Dow's discovery obligations under the Federal Rules of Civil Procedure and fraudulent

concealment." (*Id.* at ¶ 19.) HRD does not discuss any of the other "literally hundreds of patent applications that, on their face, appear[] to stem from the JDA." (*Id.* at ¶ 21.) Rather, it refers the Court to Exhibit 1 to the New Complaint, which is "a list of patent applications that, upon information and belief, may have originated due to the research conducted under the JDA and for which HRD should have an ownership interest." (*Id.* at ¶ 22.) As noted above, this is the exact same list upon which HRD founded its failed Motion to Reopen Discovery.

HRD's New Complaint raises three claims, each based on HRD's patent ownership assertions. First, HRD asserts that Dow breached the JDA "by failing to fully disclose the work performed and developments achieved under the JDA, and by filing patent applications that contained proprietary information belonging to HRD." (*Id.* at ¶ 28.) Second, Dow allegedly breached its "duty of good faith in perfecting patent rights" because "Dow has sought patent protection for inventions jointly conceived of by HRD and Dow under the JDA without consulting HRD." (*Id.* at ¶ 33.) Third, Dow committed fraudulent concealment because "Dow has consistently and steadfastly withheld information from HRD related to the developments under the JDA . . . many of which contractually belong to HRD." (*Id.* at ¶ 38.) HRD asserts that it "diligently pursued this information for several years through discovery in the Underlying Litigation," but Dow fraudulently withheld the information during discovery. (*Id.*)

HRD also spends sixteen paragraphs in the New Complaint (*see id.* at ¶¶ 8-23) recounting small snippets of the Delaware Litigation's vast history, referencing only a handful of the numerous discovery requests, responses, and associated disputes that took place—before both the Special Master (including many in-person conferences and written briefs) (*id.* at ¶¶ 12, 14, 20-21) and the District Court (*id.* at ¶¶ 13, 23). Even these selective snippets, however, demonstrate that the Delaware Litigation was protracted, complex, and highly technical.

10

Tellingly, nowhere in the New Complaint does HRD ever allege a *new* fact—a fact that was not already presented in the Delaware Litigation. That is because HRD has no new allegations, not to mention any new allegations that have not been rejected already in Delaware.

With no new evidence to present, HRD attempts to frame the "situation" as creating a "quandary for HRD" because certain claims that allegedly were not litigated in Delaware could become untimely depending on the outcome of HRD's appeal. (*See id.* at ¶¶ 1, 24-25.) The quandary of which HRD complains is nothing more than an unfavorable ruling by the district court tasked for nearly a decade with trying this case and controversy. Such a "quandary" does not entitle HRD to forum shop and waste significant judicial resources to obtain a second opinion by a different judge in a different district.

## ARGUMENT

## I.   THE COURT SHOULD TRANSFER THIS LAWSUIT TO DELAWARE.

"For the convenience of the parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). Because (a) the interests of justice strongly favor transfer, (b) Delaware is a proper venue, and (c) the convenience of the parties also favors transfer, the Court should transfer this action to the District of Delaware, where HRD and Dow have litigated since 2005.

### A.   The Interests of Judicial Economy Strongly Favor Transfer.

Transferring this action to Delaware is in the interests of justice because it will promote substantial judicial economy. The "existence of multiple lawsuits involving the same issues is a paramount consideration when determining whether a transfer is in the interest of justice." *In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009). As explained by the Supreme Court, "[t]o permit a situation in which two cases involving precisely the same issues are

11

simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that [§] 1404(a) was designed to prevent." *Cont'l Grain Co. v. The Barge FBL-585*, 80 S. Ct. 1470, 1474 (1960).

Here, HRD's New Complaint raises issues that were specifically resolved against HRD— on the merits—by the Delaware Court. Indeed, HRD's claim of fraudulent concealment in its New Complaint is premised on Dow's alleged discovery malfeasance in the Delaware Litigation and would require this Court to conduct a forensic review of Dow's discovery in that action. Even where cases "may not involve precisely the same issues," judicial economy is served by having the same district court try cases that have significant overlap legally and factually, as that court is already familiar with the relevant issues. *In re Volkswagen*, 566 F.3d at 1351.

Furthermore, given the extensive experience that the Delaware Court has with the facts, circumstances, and documents at issue here, judicial economy alone is enough to justify transfer. The "consideration of [the] interest of justice, which includes judicial economy, may be determinative to a particular transfer motion, even if the convenience of the parties and witnesses might call for a different result." Ex. 32, *H-W Tech., L.C. v. Domino's Pizza LLC*, 2013 WL 6333438, at *7 (N.D. Tex. Dec. 5, 2013) (quoting *Regents of the Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1565 (Fed. Cir. 1997)) (internal quotations omitted). This means that a district court has the discretion to afford "determinative weight to the consideration of judicial economy," and little or no weight to the private and public factors. *See Regents of Univ. of Cal.*, 119 F.3d at 1565 (upholding district court retention of case based on court's familiarity with the highly technical issues, with little or no weight afforded to the other factors).

The interests of judicial economy are plainly served by keeping in the same district cases that involve the same parties and issues, or that concern similar complex and technical issues of

fact or law. For example, in a case involving an alleged breach of a subscription agreement, a Texas district court granted a motion to transfer the case to a Florida district court. *Houston Trial Reports, Inc. v. LRP Publ'ns, Inc.*, 85 F. Supp. 2d 663, 671-72 (S.D. Tex. 1999). The court noted that the public interest factor "favors transfer of venue if transfer would enable different cases involving the same parties or issues to be heard in a single forum." *Id.* at 671. Assessing the other litigation, the court concluded that the Florida case was "very similar," involved the same defendant, and the Florida court was already "familiar with the facts and the critical legal issues both cases present," having already decided certain sensitive discovery issues and a motion for partial summary judgment, and where the jury had already found the defendant liable. *Id.* "Given the Florida district court's familiarity with the substantive legal issues and case management challenges this case will present," the court found that judicial economy considerations weighed strongly in favor of transfer. *Id.* at 672.

These principles are also routinely applied in the patent context. As explained by one Texas court, transferring a case to a different district where other relevant cases are pending is "most appropriate when one court has extensive familiarity with the technology or the legal issues involved, a claim construction opinion has been prepared, and the case involve[s] the same or similar defendants with the same or similar products." Ex. 32, *H-W Tech.*, 2013 WL 6333438, at *7 (internal quotation omitted). "Where there are related lawsuits involving the same plaintiff, the same patent, and similar technology, transfer to another venue [thus separating related cases] will prevent the parties from taking advantage of the built-in efficiencies that result from having related cases before the same judge." *Id.* at *8 (internal quotation omitted); *see also In re Volkswagen*, 566 F.3d at 1351 (upholding Texas court's decision to keep certain cases with

overlapping issues and patents within the same district, even where the cases "may not involve precisely the same issues").

Granting Dow's motion to transfer, rather than having a new court familiarize itself with over eight years of litigation, will serve the interests of justice. *First*, HRD's New Complaint names the same parties as the Delaware Litigation. *Second*, the allegations in HRD's New Complaint concern, at base, the same transaction underlying much of the Delaware Litigation— namely, the scope and application of the JDA. In fact, as explained later, HRD makes the exact arguments here that it asserted in the Delaware Litigation. *Third*, HRD's New Complaint relies on the same patent applications that were at issue in the Delaware Litigation. Although not patent infringement cases, both HRD's New Complaint and the Delaware Litigation involve complicated, highly technical issues of fact relating to numerous patent applications and the JDA. *Fourth*, having been tasked with this litigation since 2005, the Delaware Court is well-versed in the protracted history between HRD and Dow. Even HRD's New Complaint implicitly acknowledges that Delaware is a more sensible venue. (*See* Compl. ¶ 24 (stating that depending on the outcome of its appeal, HRD "would transfer this action to the United States District Court for the District of Delaware").)

For these same reasons, under the District of Delaware's related-case rule,[11] once transferred, this action will almost certainly be assigned to the Honorable Richard G. Andrews,

---

[11] Related cases in the District of Delaware are assigned to the same judge, and are those that (1) "[a]rise from the same or substantially identical transactions, happenings, or events . . .; (2) [i]nvolve the same or substantially the same parties or property; (3) [i]nvolve the same patent or the same trademark; or (4) [f]or other reasons would entail substantial duplication of labor if heard by different judges." D. Del. L.R. 3.1(b).

the judge currently assigned to the Delaware Litigation. Judge Andrews decided the Motion to Reopen Discovery that resolved the allegations in HRD's New Complaint. (*See* Ex. 15.)[12]

## B. Delaware Is a Proper Venue.

Venue is proper in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." 28 U.S.C. § 1391(b)(1). Dow, the only defendant in this action, is incorporated in Delaware and therefore resides in Delaware. *See id.* at § 1391(c)(2). Thus, Delaware is a proper venue for this action.

## C. The Convenience of the Parties and Witnesses Also Favor Transfer.

While the interests of judicial economy alone warrant transfer to Delaware, the convenience of the parties and witnesses also favor transfer. The same private and public interest factors considered for *forum non conveniens* motions govern determination of the convenience of the parties and witnesses under § 1404(a). The private interest factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." Ex. 32, *H-W Tech.*, 2013 WL 6333438 at *2 (quoting *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004)). The public interest factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict laws or in the application of foreign law." *Id.* "The movant must show that

---

[12] Judge Andrews also issued the Delaware Litigation's final summary judgment rulings (including one dismissing finally HRD's patent-related counterclaims) (Ex. 16-17), and in so doing became closely acquainted with the JDA-related facts and legal arguments that have long been in dispute.

considering both the convenience of the parties and witnesses and the interest of justice under § 1404(a), the transferee venue is clearly more convenient." *Id.*

As evidenced by the nine years of litigation already undertaken in Delaware, the private interest factors favor transfer to Delaware. With thousands of documents already exchanged by the parties, many hours of depositions taken—including expert depositions on the very issues raised in HRD's New Complaint—and numerous hearings before a Special Master and District Court Judge, the District of Delaware has already proved capable of providing access to sources of proof and securing the attendance of witnesses. Practical considerations also favor transfer as local Delaware counsel is already well-versed in these very same issues and maintains files (many of which are under seal due to their technical sensitivity)[13] directly relevant to HRD's present claims in Delaware—including HRD's claim of fraudulent concealment, which is founded upon supposed discovery misconduct that took place in the Delaware Litigation.

The public interest factors also favor transfer. For example, during the 12 months ending September 30, 2013, the Southern District of Texas received over 15,000 filings and had 11,000 cases pending, versus about 2,500 and 2,800, respectively, for the District of Delaware.[14] Delaware also has an interest in the matter because the outcome here could have a direct financial impact on Dow, a Delaware corporation and resident. *See* Ex. 32, *H-W Tech.*, 2013 WL 6333438, at *6 (finding local interest favored district where defendant was located). In addition, the JDA provides that in resolving any ambiguity as to its meaning, Delaware law will

---

[13] In total, there are 918 filings in the Delaware Litigation, dozens of which are sealed. (*See* Ex. 23 (Delaware Litigation docket sheet, highlighting sealed filings).)

[14] *See* District Courts—September 2013, Federal Court Management Statistics, United States Courts, at pp. 14, 36, *available at* http://www.uscourts.gov/Statistics/FederalCourtManagementStatistics/district-courts-september-2013.aspx.

apply (Ex. 1 at Ex. A ¶ 9.6), and HRD even cites Delaware law in its New Complaint (Compl. ¶ 37).

## II.    ALTERNATIVELY, HRD'S NEW COMPLAINT SHOULD BE DISMISSED.

The Delaware Court has already rejected the patent ownership claims that HRD raises here.  Thus, as detailed below, *res judicata* and collateral estoppel bar HRD's claims.  Moreover, even if the claims had not been previously adjudicated, this Court should dismiss them because HRD's breach of contract claims fail to meet the pleading standards of *Twombly*/*Iqbal*, and its fraudulent concealment claim does not satisfy the Rule 9(b) pleading standard for fraud claims.

### A.    *Res judicata* and Collateral Estoppel Preclude HRD's Claims Because the Delaware Court Already Ruled on Them.

*Res judicata* (claim preclusion) and collateral estoppel (issue preclusion) embody the principle that "a right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction cannot be disputed in a subsequent suit between the same parties." *Montana v. United States*, 99 S. Ct. 970, 973 (1979).  *Res judicata* and collateral estoppel preclude HRD's claims because HRD asserted the very same patent ownership claims in the Delaware Litigation that it asserts here, and the Delaware Court rejected them.

#### 1.    *Res Judicata* Bars HRD's Already-Rejected Claims.

In a second lawsuit between two parties, *res judicata* "prohibits either party from raising any claim or defense in the later action that was or could have been raised in support of or in opposition to the cause of action asserted in the prior action."  Ex. 29, *Dimitric v. Tex. Workforce Comm'n*, 2009 WL 33412, at *4 (S.D. Tex. Jan. 5, 2009).  *Res judicata* bars a claim when four factors are present:  (1) the parties are "identical or in privity" with the parties to the previous suit; (2) the judgment in the prior suit was "rendered by a court of competent jurisdiction;" (3)

the prior suit was "concluded to a final judgment on the merits;" and (4) the "same claim" is "involved in both actions." *United States v. Davenport*, 484 F.3d 321, 326 (5th Cir. 2007).

Here, Factor 1 is present because the two suits' parties are the same. Factor 2 is satisfied because the Delaware Court rendered a final judgment after granting Dow summary judgment, and its jurisdiction over HRD's own rejected counterclaims has never been in dispute. (Ex. 18.)

Factor 3 is met because the Delaware Court concluded the Delaware Litigation with summary judgment rulings "on the merits" that included an adjudication of the parties' rights under the JDA. (Exs. 6, 16); *see Harper Plastics, Inc. v. Amoco Chems. Corp.*, 657 F.2d 939, 943 (7th Cir. 1981) ("For the purposes of res judicata, the definition of a judgment on the merits is one which is based on legal rights as distinguished from mere matters of practice, procedure, jurisdiction, or form." (internal quotations omitted)).

Factor 4 is also met because the actions involve the same claims under the Fifth Circuit's "transactional test." *See Davenport*, 484 F.3d at 326. This test "focuses on whether the two cases under consideration are based on the same nucleus of operative facts," which, "rather than the type of relief requested, substantive theories advanced, or types of rights asserted, defines the claim." *Id.* Thus, because the disputed facts are the same, it does not matter that the Delaware Court resolved whether the patents at issue disclosed Developments in the context of a discovery motion. Any ruling, whether on summary judgment, a motion to amend a complaint, or discovery, can trigger *res judicata*. *See Sullivan v. Hyland*, 647 F. Supp. 2d 143, 151-52 (D. Conn. 2009) ("Of the claims that were previously dismissed in plaintiffs' previous federal lawsuit, some were dismissed at the motion to dismiss stage, others on a motion for summary judgment, and still others were preemptively denied on motions to amend the complaint or to join new defendants. However, the stage of dismissal is irrelevant."); Ex. 27, *Banks v. Schutter*,

2008 WL 4826285, at *4 (E.D. Pa. Nov. 6, 2008) (collecting cases for the proposition that "the denial of a motion to amend a complaint has been held to constitute a final judgment on the merits and thus would bar a relitigation of the same claim"). Here, the same facts central to HRD's current claim that hundreds of Dow applications belong to HRD under the JDA were likewise central to the Delaware Court's ruling on HRD's Motion to Reopen Discovery. Both claims concern the content of the Dow patent applications and their relationship to the JDA.

Indeed, in its Motion to Reopen Discovery, HRD identified the very same patents and patent applications that HRD identifies in Exhibit 1 to its New Complaint. HRD argued that these patent applications disclosed inventions involving PE Waxes and therefore could be Developments under the JDA. HRD's expert, Dr. Citron, opined that these hundreds of patents and patent applications disclosed Developments in the categories allocated to HRD under the JDA. However, the Delaware Court rejected HRD's position and stated, "None of the applications HRD cites are demonstrative of Dow discovery failings, as *they do not fall within the scope of the JDA or Supply Agreement*." (Ex. 15 at 6-7 (emphasis added).)

The Delaware Court explicitly rejected HRD's ownership claim over the only two applications HRD discusses in its New Complaint, the '497 application and the '861 application. (Ex. 15 at 7 ("Because the '497 application was never actually reduced to practice, it was not within the scope of both the JDA and Supply Agreement."); *id.* at 8 ("There is thus no indication that the '861 application is related to a hot melt adhesive product and it therefore does not supply good cause to reopen discovery.").) The Delaware Court also explained why other applications—applications that HRD lists again in Exhibit 1 to its New Complaint—do not belong to HRD, noting that it already rejected HRD's claims in a previous summary judgment ruling (where the court also found that Dow did not breach a duty of disclosure with respect to

these applications). (Ex. 15 at 8-10, Ex. 6 at 47-54.) Thus, the Delaware Court has already determined that HRD does not own the applications listed in HRD's New Complaint and that Dow did not breach its duty of disclosure with respect to any of these applications, which is the "same claim" that HRD asserts here. Indeed, the Delaware Court twice rejected HRD's claims for four of the applications—on summary judgment and then again in ruling on the Motion to Reopen Discovery. Each ruling constitutes an independent basis for *res judicata*.

### 2. Collateral Estoppel Precludes Re-Litigation of HRD's Claims.

Collateral estoppel "bars successive litigation of an issue of fact or law that is actually litigated and determined by a valid and final judgment, and . . . is essential to the judgment." *Bobby v. Bies*, 129 S. Ct. 2145, 2152 (2009) (internal quotations omitted). It arises when: (1) the parties to the two suits are "identical;" (2) the issue to be precluded is "identical to that involved in the prior action;" (3) the issue was "actually litigated" in the prior suit; and (4) determination of the issue in the prior suit was "necessary to the resulting judgment." *In re Keaty*, 397 F.3d 264, 270-71 (5th Cir. 2005). These factors are all present here.

*First*, HRD and Dow are parties to both this suit and the Delaware Litigation.

*Second*, a threshold issue to HRD's New Complaint—whether Dow's applications disclose a Development under the JDA—is identical to the issue raised in HRD's failed Motion to Reopen Discovery. (*See* Ex. 15 at 6-7 ("None of the applications HRD cites are demonstrative of Dow discovery failings, as they do not fall within the scope of the JDA.").)

*Third*, the parties "actually litigated" this issue in the Delaware Litigation. An issue is "actually litigated" where it is "raised, contested by the parties, submitted for determination by the court, and determined." *Keaty*, 397 F.3d at 272; *see also id.* at 271 ("[T]here is no requirement of a trial or evidentiary hearing to conclude that an issue has been 'actually litigated.'"). HRD submitted to the Delaware Court the patents and patent applications listed in

Exhibit 1 to its New Complaint and asked the Delaware Court to decide whether any of these patents or applications was within the scope of the JDA such that further discovery would be necessary. The Delaware Court decided that issue squarely against HRD.

*Fourth*, this ruling was "necessary to the resulting judgment" in Dow's favor. By deciding that none of the patents or applications on HRD's list were within the scope of the JDA, the Delaware Court was able to keep discovery closed and decide the remaining claims. The Delaware Court could not have disposed of HRD's counterclaims when it did if it had reopened discovery as requested by HRD. Consequently, the Delaware Court's ruling that none of the patents or applications on HRD's list was within the scope of the JDA was necessary to the resulting judgment. *See Biggins v. Hazen Paper Co.*, 111 F.3d 205, 210 (1st Cir. 1997).

**B.      HRD's New Complaint Fails to Satisfy the Applicable Pleading Standards.**

HRD's claims should also be dismissed for failure to satisfy applicable pleading standards. HRD must plead facts making it plausible that HRD is entitled to relief. Each of HRD's three claims necessarily depends on facts establishing that at least some of the various patent applications filed by Dow are within the scope of the JDA. HRD raised many specific factual allegations on this issue in Delaware and was soundly rejected on the merits. Thus, at a minimum, HRD must plead specific facts making it plausible that the patents and applications in HRD's Exhibit 1 are within the scope of the JDA in the face of contrary rulings on every single patent that HRD raised with the Delaware Court.

However, HRD's New Complaint fails entirely to meet this requirement. Furthermore, HRD's concealment claim fails to meet the heightened pleading standard for fraud.

**1.     HRD Fails to Plead Facts that Plausibly Allege a Dow Breach of the JDA (Counts 1 and 2).**

HRD's claims should be dismissed because it fails to plead facts supporting a breach of the JDA by Dow.  *See* Ex. 33, *Muthukumar v. Univ. of Tex. at Dallas*, 2010 WL 5287530, at *5 (N.D. Tex. Dec. 27, 2010).   All of HRD's specific factual allegations relate to two patent applications—the '497 and '861 applications—that were expressly considered by the Delaware Court and found to be outside the scope of the JDA.  HRD's allegations on these applications are implausible because the Delaware Court has already rejected HRD's claims.[15]

Apart from its allegations on the '497 and '861 applications, HRD pleads no specific facts on any application.  HRD merely asserts that its "expert found there were literally hundreds of patent applications that, on their face, appeared to stem from the JDA." (Compl. ¶ 21.)  HRD then refers the Court to its long list of "patent applications that, upon information and belief, may have originated due to the research conducted under the JDA and for which HRD should have an ownership interest."   (*Id.* at ¶ 22.)   These generic allegations are inadequate under *Twombly/Iqbal* because they plead no specific facts showing that the applications disclose subject matter belonging to HRD under the JDA.  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." (internal quotations omitted)); *Fowler*

---

[15] *See* Ex. 34, *Perry v. Williams*, 2013 WL 1703741, at *2 (D.S.C. Apr. 19, 2013) ("[I]t is appropriate to dismiss Plaintiff's claim . . . . Plaintiff has already raised this claim in a previous action, and the dismissal of that action was affirmed by the Fourth Circuit on appeal. Though the earlier dismissal was without prejudice, such that claim preclusion does not apply, the Court will not reach a different outcome here." (internal citations omitted)); Ex. 35, *Wagner v. Aurora Loan Servicing*, 2011 WL 6819041, at *12 (D. Haw. Dec. 27, 2011) ("This district court has previously rejected the allegations of the form Francha complaint as failing to state a plausible quiet title claim. The quiet title claim before the court in *Campollo* is identical to Count XI in the instant case. This Court agrees with the reasoning in *Campollo* and also finds that Count XI in the instant case fails to state a plausible quiet title claim.").

*v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009) ("[A] complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such as entitlement with its facts."); Ex. 28, *Bashore v. Resurgent Capital Servs., L.P.*, 452 F. App'x 522, 524 (5th Cir. 2011) ("Bashore's general allegations that appellees failed to cease collection efforts after notification of her dispute are unsupported by specific factual allegations in her complaint that permit our court to infer more than the mere possibility of misconduct.").

The implausibility of HRD's ownership claims for the '497 and '861 applications demonstrates that HRD's claims to the other applications are even more implausible. In both its Motion to Reopen Discovery and its New Complaint, HRD highlights the '497 and '861 applications to argue that hundreds of applications belong to it under the JDA, while relegating the remaining applications to a laundry list exhibit. It is telling that, even after the Delaware Court rejected HRD's ownership claims for the '497 and '861 applications, they are still the only applications that HRD believes are worth actual discussion in its New Complaint.

*Second*, HRD fails to allege that the inventions of the applications at issue were actually reduced to practice during the JDA's Activity Period. Without actual reduction to practice during this time period, HRD has no ownership claim. (Ex. 1 at Ex A ¶ 10.7) This dooms HRD's New Complaint. Ex. 30, *Gonzales v. Everbank*, 2013 WL 6667724, at *2 (W.D. Tex. Dec. 17, 2013) ("Because Plaintiff does not allege facts on all of the necessary elements of her breach of contract claim, she fails to state a claim upon which relief can be granted."). Moreover, even if HRD attempted to plead actual reduction to practice, the claim would be implausible. The Delaware Court already found that the '497 application was never actually reduced to practice (Ex. 15 at 7), and HRD's patent expert—upon whom HRD relies to claim

ownership of Dow's applications—has no conceivable knowledge or information about when, if ever, Dow actually reduced to practice the inventions at issue.

Thus, even if HRD's patent ownership claims were not barred by *res judicata* and collateral estoppel, they should be dismissed as implausible.

### 2. HRD's Fraudulent Concealment Claim Does Not Plead Facts With Sufficient Particularity (Count 3).

HRD's claim for fraudulent concealment is even more inadequate than its breach of contract claims. Under Texas law, a claim for fraudulent concealment arises where:

> a. A party conceals or fails to disclose a material fact within the knowledge of that party, b. The party knows that the other party is ignorant of the fact and does not have an equal opportunity to discover the truth, c. The party intends to induce the other party to take some action by concealing or failing to disclose the fact, and d. The other party suffers injury as a result of acting without knowledge of the undisclosed fact.

*Alcan Aluminum Corp. v. BASF Corp.*, 133 F. Supp. 2d 482, 498 (N.D. Tex. 2001). HRD fails to even allege facts plausibly showing that it is entitled to relief, to say nothing of its failure to meet the heightened pleading standard for a fraud claim.

Rule 9(b) governs the pleading of a claim for fraudulent concealment. *See Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*, 238 F.3d 363, 368 (5th Cir. 2001) ("Rule 9(b) applies by its plain language to all averments of fraud."). Thus, HRD "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). HRD must set forth "the who, what, when, where, and how" of its fraud allegation. *Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter*, 607 F.3d 1029, 1032 (5th Cir. 2010).

As an initial matter, HRD cannot allege that Dow "conceal[ed] or fail[ed] to disclose a material fact." *See Alcan*, 133 F. Supp. 2d at 498. Dow had no duty to disclose information

regarding the applications at issue because, as described above, and as the Delaware Court already ruled, the applications do not belong to HRD under the JDA.

Moreover, HRD provides no detail of *how* Dow "intend[ed] to induce [HRD] to take some action by concealing or failing to disclose" information, or *how* HRD "suffer[ed] injury as a result of acting without knowledge" of the information. *See id.* HRD pleads only that

> Dow has consistently and steadfastly withheld information from HRD related to the developments under the JDA. First, by not disclosing it pursuant to the express terms of the JDA at the time of the discovery. Second, HRD has diligently pursued this information for several years through discovery in the Underlying Litigation.

(Compl. ¶ 38.) HRD pleads no facts that support an inference that Dow intended to induce HRD to take some action by concealing the applications at issue. *See Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994) ("[P]leading scienter requires more than a simple allegation that a defendant had fraudulent intent. To plead scienter adequately, a plaintiff must set forth specific facts that support an inference of fraud."). HRD's conclusory allegations that Dow "consistently and steadfastly withheld information" that "resulted in substantial harm to HRD" fail to meet basic pleading standards, let alone Rule 9's. *See Clemons v. WPRJ, LLC*, 928 F. Supp. 2d 885, 902 (S.D. Tex. 2013) ("The problem here is that Plaintiffs' conclusory fraud allegations, totally lacking in factual detail for support, fail to meet the pleading standards of Federal Rule of Civil Procedure 12(b)(6), no less of Rule 9(b)."); Ex. 31, *Greene v. Indymac Bank, FSB*, 2012 WL 5414097, at *4 (S.D. Miss. Nov. 6, 2012) ("In pleading the elements of an actionable fraud claim, the underlying allegations must be factual and not conclusory.").

## CONCLUSION

For the reasons set forth herein, the Court should transfer this suit to the District of Delaware or, in the alternative, dismiss HRD's New Complaint with prejudice.

Dated:  January 10, 2014                              Respectfully submitted,

                                                      */s/ Penn C. Huston*
                                                      Penn C. Huston
                                                      *Attorney-in-Charge*
                                                      State Bar No. 00796804
                                                      Southern District Bar No. 20542
                                                      KING & SPALDING LLP
                                                      1100 Louisiana, Suite 4000
                                                      Houston, Texas 77002-5213
                                                      Tel: (713) 751-3200
                                                      Fax: (713) 751-3290
                                                      phuston@kslaw.com

*Of Counsel:*

Brian J. Fischer
State Bar No. 4118568
*Pro Hac Pending*
Katya Jestin
State Bar No. 2854073
*Pro Hac Pending*
JENNER & BLOCK LLP
919 Third Avenue, 37th Floor
New York, NY 10022-3902
Telephone:  (212) 891-1629

Aaron A. Barlow
State Bar No. 6200856
*Pro Hac Pending*
JENNER & BLOCK LLP
353 N. Clark St.
Chicago, IL  60654
Telephone:  (312) 222-9350

*Attorneys for Defendant The Dow Chemical Company*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a true and correct copy of the foregoing document was filed via the

Court's CM/ECF system on January 10, 2014 effectuating service on all counsel of record.


*/s/ Penn C. Huston*

Penn C. Huston